**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 24-cv-03545-NYW

B.G.,[1]

     Plaintiff,

v.

FRANK BISIGNANO, Commissioner of the Social Security Administration,[2]

     Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This civil action arises under Title XVI of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **AFFIRMED**.

**BACKGROUND**

Plaintiff B.G. challenges the Commissioner's final decision denying his application for supplemental security income ("SSI"). *See generally* [Doc. 10]. Plaintiff filed an application for SSI on October 28, 2021, alleging that he is disabled due to the following conditions: surgery in 2015 to remove thyroids and jugular vein; chronic neck and right shoulder pain; neck and face numbness; cervical vertigo; complex regional pain

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b).

[2] Under Fed. R. Civ. P. 25(d), Commissioner Bisignano is automatically substituted in as the Defendant in this matter.

syndrome; post-traumatic stress disorder; anxiety; panic attack disorder; hypertension; obstructive sleep apnea; insomnia; shortness of breath; and muscle spasms in arms and legs. [Doc. 9-5 at 156–57].[3] He alleged a disability onset date of December 31, 2014. [*Id.* at 157]. The Social Security Administration ("SSA") denied Plaintiff's application on October 14, 2022, [Doc. 9-4 at 92–95], and again upon reconsideration on March 17, 2023, [*id.* at 99–100]. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), [*id.* at 106–07], and a hearing was held before ALJ Debra L. Boudreau on January 4, 2024, *see* [Doc. 9-2 at 38–55].

On February 26, 2024, the ALJ issued a decision denying Plaintiff's request for SSI. [*Id.* at 18–32]. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 28, 2021, Plaintiff's application date. [*Id.* at 23]. The ALJ also found that Plaintiff has the following severe impairments: bilateral degenerative joint disease, cognitive disorder, and persistent depressive disorder, and the following non-severe impairments: history of thyroid cancer without recurrence, degenerative disc disease of the cervical spine, obstructive sleep apnea, gastroesophageal reflux disease, hypertension, sinusitis, and plantar fasciitis. [*Id.*].

With respect to mental impairments, the ALJ determined that Plaintiff has a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. [*Id.* at 24–25]. Considering

---

[3] When citing to the Administrative Record, the Court cites to the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of each page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

Plaintiff's impairments individually and in combination, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations. [*Id.* at 24].

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b),[4] with the following restrictions:

> The claimant is able to occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. The claimant can stand and/or walk for more than six hours and sit for more than six hours out of an eight-hour workday. He is able to occasionally work on ladders, ropes, and scaffolds. He is able to frequently reach overhead with the non-dominant left upper extremity and occasionally reach with the dominant right upper extremity. The claimant should avoid work at unprotected heights. He is able to understand, remember, and carry out detailed but not complex instructions over an eight-hour workday and forty-hour workweek.

[*Id.* at 26]. The ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [*Id.* at 31].

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 9, 2024, [*id.* at 8–11], which rendered the ALJ's decision the final decision of the Commissioner. On December 23, 2024, Plaintiff sought judicial review of the Commissioner's decision in the United States District Court for the District of Colorado. [Doc. 1]. This matter is now ripe for resolution.

---

[4] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

**LEGAL STANDARDS**

SSI is available to an individual who is financially eligible,[5] files an application for SSI, and is disabled as defined in the Act.  42 U.S.C. § 1382; 20 C.F.R. § 416.202.

An individual is disabled only if their "physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  The disabling impairment must last, or be expected to last, for at least twelve consecutive months.  *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).  When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making the determination of disability.  42 U.S.C. § 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. § 416.920(a)(4).  The five steps contemplate the following determinations:

1.  Whether the claimant has engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment or combination of impairments;

3.  Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4.  Whether the claimant has the RFC to perform their past relevant work; and

5.  Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

---

[5] SSI is a needs-based program established for individuals with limited resources.  *See* 20 C.F.R. § 416.110; *see also Ford v. Commissioner*, 816 F. App'x 276, 279 (10th Cir. 2020) (discussing the distinction between disability insurance benefits and SSI).

*See id.* § 416.920(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," and the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's decision, the Court limits its inquiry to whether substantial evidence supports the decision and whether the ALJ applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's," *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016), but the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Flaherty*, 515 F.3d at 1070 (quotation omitted).

Remand is also warranted where the ALJ fails to apply the correct legal standard or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir.

2005) (quotation omitted).  But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

B.G. raises two points of error in the ALJ's decision.  First, he argues that the ALJ failed to properly consider and evaluate the opinions of Dr. Richard Madsen.  [Doc. 10 at 12].  Then, he contends that the ALJ erred by not including any social-interaction limitations in the RFC.  [*Id.* at 17].

## I.    The ALJ's Evaluation of Dr. Madsen's Opinions

### A.    Applicable Standards

The Social Security Regulations identify five types of evidence that the SSA considers in adjudicating a claim for benefits:  (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings.  20 C.F.R. § 416.913(a).  "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in work-related abilities.  *Id.* § 416.913(a)(2).  The ALJ has a duty to "give consideration to all the medical opinions in the record," *Keyes-Zachary*, 695 F.3d at 1161, and the ALJ must articulate how persuasive she finds each medical source opinion, 20 C.F.R. § 416.920c(a)–(b); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (the ALJ "must consider all relevant medical evidence in making [her] findings").

The persuasiveness of a medical source's opinion is evaluated based on five components: (1) the supportability of the opinion; (2) the consistency of the opinion; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c(c). The regulations instruct that the factors of supportability and consistency "are the most important factors." *Id.* § 416.920c(b)(2). Therefore, the ALJ is required to explain how she considered the supportability and consistency of each medical source opinion, and "may, but [is] not required to, explain how [she] considered the [remaining factors], as appropriate." *Id.*

The supportability component concerns whether the medical source's opinions are supported by objective medical evidence and any supporting explanations. *Id.* § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* The consistency factor looks at whether the medical source's opinion is consistent with evidence from other medical sources and nonmedical sources in the record. *Id.* § 416.920c(c)(2). "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." *Id.*

Although the Regulations do not state the depth at which the ALJ must analyze or discuss these factors, the ALJ must provide "sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Harp v. Kijakazi*, No. 21-cv-00275-KRS, 2022 WL 2341740, at *6 (D.N.M.

7

June 29, 2022) (quotation omitted).  At minimum, the ALJ must "provide an explanation

that allows the reviewing court to follow [her] reasoning and communicates how [s]he

considered the factors of consistency and supportability for each medical source's

opinions."  *Zambrano v. Kijakazi*, No. 20-cv-01356-KRS, 2022 WL 1746765, at *5

(D.N.M. May 31, 2022).

### B.      The ALJ's Evaluation of Dr. Madsen's Opinions

Dr. Madsen is a psychologist who performed a psychological evaluation of Plaintiff

on September 26, 2022.  [Doc. 9-8 at 1123].  Relevant here, Dr. Madsen opined that

Plaintiff has moderate impairments in interacting with coworkers and with the public and

in accepting instructions from supervisors.  [*Id.* at 1125–26].[6]

In his decision, the ALJ noted Dr. Madsen's opinions, including the opinion that

Plaintiff has a moderate limitation in accepting instructions from supervisors and

interacting with coworkers and the public.  [Doc. 9-2 at 30].  The ALJ found Dr. Madsen's

opinion "not fully supported or persuasive."  [*Id.*].  She explained:

> Dr. Madsen's grossly normal exam of the claimant, including his average
> range of intelligence, does not support Dr. Madsen's overestimation of the

---

[6] Plaintiff asserts that Dr. Madsen provided an "expert opinion of moderate limitations in interacting with others and in adapting and managing."  [Doc. 10 at 14].  However, Dr. Madsen's evaluation report does not expressly provide an opinion about a limitation in "adapting and managing."  *See* [Doc. 9-8 at 1123–26].  The Court thus construes Plaintiff's argument to refer to Dr. Madsen's opinion that Plaintiff is moderately limited in the ability to accept instructions from supervisors, as this category—of all the categories in which Dr. Madsen assessed Plaintiff with a moderate limitation—most closely resembles the domain of "adapting and managing" oneself.  *Cf.* 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00E(4) ("Adapting and managing oneself . . . refers to the abilities to regulate emotions, control behavior, and maintain well being in a work setting.  Examples include:  *Responding to demands;* adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." (emphasis added)).

claimant's capabilities.  The evidence of the claimant's stable mental status exams is inconsistent with Dr. Madsen's opinion.  For example, the claimant's memory was normal and he could follow multi-step commands, which is inconsistent with finding a moderate limitation in performing detailed and complex tasks.  Additionally, the claimant lived with his mother and could attend doctor's appointments in person, which is inconsistent with finding a moderate limitation in interacting with the public, coworkers, and supervisors.  Dr. Madsen's opinion is vague as he does not provide a specific, function-by-function analysis of the most the claimant is capable.  He relies on terms like "mild" and "moderate" that have limited functional value.  For these reasons, the undersigned finds Dr. Madsen's opinion not fully supported or persuasive.

[*Id.*].

Plaintiff argues that the ALJ failed to properly consider the consistency of Mr. Madsen's opinions, as required by 20 C.F.R. § 416.920c(c).  [Doc. 10 at 14].[7]  He first takes issue with the ALJ's finding of inconsistency between a moderate limitation in social interaction and the fact that Plaintiff lives with his mother and can attend doctor's appointments.  *See* [*id.* at 15].  He argues that the ALJ's articulation of inconsistency "is not sufficient" because "most people can and do attend their medical appointments in person and live with family members," and "[t]he ALJ did not provide a narrative explanation as to how [B.G.'s] ability to visit his doctors in person and live with his mother translated into full ability to adequately interact with supervisors in a work setting."  [*Id.*].

The Court is respectfully unpersuaded by Plaintiff's argument, which does not provide a basis for remand.  Although Plaintiff disagrees with the ALJ's interpretation of the evidence of his home life and attendance at doctor's appointments and the weight the ALJ assigned to this evidence, the Court cannot reweigh the evidence in the record

---

[7] In a heading, Plaintiff asserts that the ALJ failed to evaluate the supportability of Dr. Madsen's opinions, too.  *See* [Doc. 10 at 12].  However, the substance of Plaintiff's argument addresses consistency, not supportability.  *See* [*id.* at 12–17].  The Court's analysis is limited accordingly.

or substitute its judgment for the ALJ's.  *Smith*, 821 F.3d at 1266; *see also Deherrera v. Commissioner*, 848 F. App'x 806, 810 (10th Cir. 2021) ("[W]hile these arguments may show the ALJ could have interpreted the evidence to support a different outcome, they, at most, amount to invitations to reweigh the evidence, which we cannot do.").  And Plaintiff cites no legal authority demonstrating that the ALJ was required to provide a "narrative explanation" as to why Plaintiff's activities "translated into full ability to adequately interact with supervisors in a work setting," which is notably a finding that the ALJ did not make.  *See* [Doc. 10].  So long as the ALJ provides an explanation that permits the Court to "follow [her] reasoning and communicates how [s]he considered" the consistency of Dr. Madsen's opinions in comparison to the other record evidence, the ALJ has provided a minimally adequate explanation.  *Zambrano*, 2022 WL 1746765, at *5.

The Court finds that the ALJ's explanation meets this threshold.  The ALJ's discussion of Plaintiff's ability to live with his mother and attend doctor's appointments was simply one example she provided to explain her conclusion that Dr. Madsen's opinion was not fully supported or persuasive and that he had "overestimat[ed]" Plaintiff's limitations.  *See* [Doc. 9-2 at 30].[8]  The ALJ *also* found that Dr. Madsen's opinion that Plaintiff has a moderate limitation in performing detailed and complex tasks was inconsistent with Plaintiff's normal memory and ability to follow multi-step commands. [*Id.*].  Based on these statements, as well as the ALJ's discussion of the evidence as a

---

[8] The ALJ concluded that Dr. Madsen had "overestimat[ed] [Plaintiff's] capabilities." [Doc. 9-2 at 30].  The Court believes this to be a typographical or word-choice error and concludes, based on the context of this statement, that the ALJ actually concluded that Dr. Madsen had overestimated *the limitations of* Plaintiff's capabilities.

whole, *see* [*id.* at 23–30], the Court is able to follow the ALJ's reasoning in concluding that Dr. Madsen's opinions were not "fully supported" by other evidence in the record.

Plaintiff also argues that the ALJ "cherry-picked" the fact that he can attend doctor's appointments in person and failed to consider other evidence that may support a limitation in interacting with others. [Doc. 10 at 15]. He argues that there is "ample medical evidence" that supports his hearing testimony that he gets panic attacks when he goes out, [*id.* at 15–16], and he contends that the ALJ erred because she "did not consider this consistent evidence when evaluating the persuasiveness of Dr. Madsen's opinions," [*id.* at 16]. Finally, he also contends that the ALJ failed to consider "ample medical evidence regarding [his] social interaction difficulties with his mother and brother." [*Id.*]. Specifically, Plaintiff points to evidence that he struggles living with his mother and brother due to family conflict and Plaintiff's resulting anxiety. [*Id.* at 16–17].

To be sure, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). But here, the Court cannot conclude that the ALJ impermissibly cherry-picked evidence of non-disability while disregarding evidence of disability. The ALJ discussed Plaintiff's report that he "ha[s] social phobia and [has] panic attacks when going to the store," is "isolated socially," "gets shortness of breath and panic attacks when walking one-half block," "lays down after trying to walk to the store," and "suffers from panic attacks that have caused multiple trips to the emergency department." [Doc. 9-2 at 24–27]. The ALJ also noted, however, that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in

11

the record." [*Id* at 27].  Specifically, the ALJ referenced Plaintiff's reports that he "trie[s] to go out sometimes" and "had people visit him and . . . talked with people on the phone and through video chat," [*id.*], and went on to note that Plaintiff was "very pleasant and cooperative with examiners" and took his dog for walks in the park, [*id.* at 28].  In other words, the ALJ expressly considered evidence of Plaintiff's limitations in social interaction *as well as* his ability to socially interact, and she weighed that evidence in fashioning the RFC.  In so doing, all of the ALJ's statements were supported by references to evidence in the record.  *See* [*id.* at 24–28].

Although the ALJ did not expressly discuss Plaintiff's reports of difficulties living with his mother and brother, "an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).[9]  Reviewing courts must "exercise common sense" in reviewing an ALJ's decision and must not "insist on technical perfection." *Keyes-Zachary*, 695 F.3d at 1166.  While Plaintiff insists that the evidence should have led the ALJ to a different conclusion, the Court "will not disturb the ALJ's findings based merely on the possibility that the ALJ could have arrived at a different conclusion." *Oneal v. Commissioner*, No. 22-1102, 2023 WL 2822123, at *2 (10th Cir. Apr. 7, 2023).

Because the ALJ explained and cited the specific evidence she relied upon in finding Dr. Madsen's opinion not fully persuasive, and because the Court can follow her reasoning, the Court concludes that this portion of the ALJ's decision is supported by substantial evidence.  *See Taunya B. v. Dudek*, No. 24-cv-00252-GBW, 2025 WL

---

[9] Furthermore, Plaintiff does not explain how his difficulties living with his family members are due to social-interaction limitations as opposed to the family conflict referenced in Plaintiff's brief.  *See* [Doc. 10 at 16].

670098, at *7 (D.N.M. Mar. 3, 2025) ("By expressly citing record evidence with which the ALJ determined Dr. Krueger's opinion to be inconsistent, the ALJ sufficiently evaluated the consistency of Dr. Krueger's opinion as compared to the medical record as a whole and thus the Court finds no error in her finding that Dr. Kruger's opinion was not persuasive.").  Remand is not warranted on this basis.

## II.    Plaintiff's Social-Interaction Limitation and the RFC

Alternatively, Plaintiff argues that the ALJ erred "by failing to include social interaction limitations within [his] RFC, despite deciding [that he] has a mild limitation in interacting with others."  [Doc. 10 at 19].  He argues that the ALJ "did not provide a narrative explanation to build an accurate and logical bridge between the medical evidence and her conclusion to not include any social interaction limitations in the RFC for the mild limitations."  [*Id.* at 20].

The Commissioner responds that the ALJ's finding of a mild limitation in social interaction amounts to only a "slight" limitation, which the Commissioner contends means a "de minimis, inconsequential, inconsiderable, or negligible" limitation.  [Doc. 11 at 7–8 (citing Merriam-Webster Thesaurus)].  The Commissioner also maintains that a limitation in social interaction does not necessarily translate into a work-related functional limitation for purposes of the RFC, *see* [*id.* at 8], and he argues that ALJs "are not required to include limitations in the RFC corresponding to mild limitations, and no specific discussion is required as to why not, because such limitations do not logically warrant workplace restrictions," [*id.* at 9].  Alternatively, the Commissioner contends that even if the ALJ erred, any error was harmless.  [*Id.* at 13].

13

As a preliminary matter, the Court is not persuaded by the Commissioner's reliance on a non-legal thesaurus to argue that a mild limitation is "inconsequential" or "negligible." "A mild limitation is not the same as no limitation." *Hurt v. O'Malley*, No. 23-cv-00518-AMG, 2024 WL 1863122, at *5 (W.D. Okla. Apr. 29, 2024) (citing 20 C.F.R. § 404 Subpt. P, App'x 1 § 12.00F(2)(a)–(b)); *see also Pendergraft v. O'Malley*, No. 22-cv-00097-DES, 2024 WL 1256281, at *3 (E.D. Okla. Mar. 25, 2024) ("A condition that causes no more than mild limitations on Claimant's work-related abilities is not the same as one that would not interfere at all."). "[C]ourts have found error where an ALJ failed to address even mild limitations in the RFC analysis." *S.R.T. v. Commissioner*, No. 24-cv-00213-NYW, 2025 WL 509268, at *6 (D. Colo. Feb. 14, 2025); *see also Lydon v. Commissioner*, No. 18-cv-01526-MSK, 2019 WL 3812379, at *4 (D. Colo. Aug. 14, 2019). Although the Court acknowledges the Regulations' guidance that a mild limitation means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is *slightly* limited," 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00F(2)(b) (emphasis added), this does not mean that mild limitations may be disregarded as negligible.

Turning to the Commissioner's argument that the ALJ was not required to account for Plaintiff's mild limitation in the RFC, the Commissioner cites to *Beasley v. Colvin*, wherein the Tenth Circuit concluded that the ALJ below was "under no obligation to include limitations in social functioning in [the claimant's] RFC based solely on [the ALJ's] finding that she had 'moderate difficulties' in social functioning" at step three. 520 F. App'x 748, 754 (10th Cir. 2013); *see also* [Doc. 11 at 9]. The Commissioner contends

that, based on *Beasley*, the ALJ was not required to include Plaintiff's mild social-interaction limitation in the RFC.  [Doc. 11 at 9].

The Commissioner's argument is partially correct in that, in *Beasley*, the Tenth Circuit rejected the notion that an ALJ must necessarily *incorporate* limitations found at step three into the RFC assessment.  *See Beasley*, 520 F. App'x at 754.  As the *Beasley* court recognized, the step-two and -three determinations of mental impairments "are not an RFC assessment but are [instead] used to rate the severity of mental impairment(s)." SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996); *see also Beasley*, 520 F. App'x at 754.  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings."  SSR 96-8P, 1996 WL 374184, at *4.

However, even though "the ALJ's description of the mental limitations at steps two and three is not an RFC assessment," this "does not mean that an ALJ may stop there." *Willie v. Saul*, No. 19-cv-00329-SMV, 2020 WL 2065286, at *4 (D.N.M. Apr. 29, 2020). If the ALJ assesses mental limitations at steps two and three, courts have concluded that the ALJ is "required *either* to include corresponding limitations in the RFC assessment or to explain the omission."  *Id.* (quotation omitted).  In other words, "the law requires explanation, not automatic inclusion."  *L.H. v. Bisignano*, No. 25-cv-01052-JWB, 2025 WL 2959197, at *7 (D. Kan. Oct. 20, 2025).  *See, e.g.*, *Crowder v. Colvin*, 561 F. App'x 740, 746 (10th Cir. 2014) (remanding case and instruction that if the ALJ "again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at

15

step four, he should explain the basis for his decision"); *Farrill v. Astrue*, 486 F. App'x 711, 713 (10th Cir. 2012) (remanding where "the RFC did not include any mental limitations, and the ALJ never explained why he chose not to include any mental limitations in the RFC, despite his previous assessment of mild limitations"). Even in *Beasley*, the ALJ provided such an explanation, stating that while the plaintiff had social-functioning limitations, the plaintiff could still "respond appropriately to supervision, co-workers, the general public, and usual work situations." 520 F. App'x at 754.

In other words, "[w]hile the ALJ need not automatically adopt step-three findings in the RFC assessment, if the ALJ chooses to not incorporate the step-three determinations into the RFC, the ALJ must explain the basis for this decision." *D.G. v. Kijakazi*, No. 21-cv-01655-NYW, 2022 WL 2666033, at *8 (D. Colo. July 11, 2022).

Plaintiff contends that the ALJ failed to include the required explanation and failed to "build an accurate and logical bridge between the medical evidence" and her decision to not include a social-interaction limitation in the RFC. [Doc. 10 at 20]. Although a close call, the Court respectfully disagrees with Plaintiff and concludes that the ALJ did enough to provide a sufficient explanation for the omission.

To be sure, the ALJ did not *expressly* state why she did not include a social-interaction limitation in the RFC. *See* [Doc. 9-2 at 26, 30]. But where the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166. The Court has reviewed the ALJ's decision in detail and concludes that it can follow her reasoning and determine that the correct legal standards have been applied.

Specifically, in her narrative discussion of the RFC, the ALJ discussed Plaintiff's ability to interact with others, noting that (1) "[t]he claimant was very pleasant and cooperative with examiners," (2) Plaintiff "lived with his mother, indicating some ability to get along with others," and (3) Plaintiff "had people visit him and he talked with people on the phone and through video chat."  [Doc. 9-2 at 28].  The ALJ also briefly tied Plaintiff's interactions to a limitations determination, stating that Plaintiff's "ability to live with others and attend medical appointments is consistent with finding no interpersonal limitations," *see* [*id.* at 29–30], which the Court construes to mean that Plaintiff's interactions are consistent with a finding that work-related functional limitations in interacting with others are not necessary.

"Although the ALJ's analysis is relatively brief, the court 'cannot insist on technical perfection' in reviewing the ALJ's decision."  *Taunya B.*, 2025 WL 670098, at *7 (quoting *Keyes-Zachary*, 695 F.3d at 1166).  The ALJ's explanation, coupled with her statement that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," *see* [*id.* at 26], permits the Court to follow the ALJ's reasoning in omitting a social-interaction limitation from the RFC.  *See C.T.J.C. v. O'Malley*, No. 22-cv-03315-SBP, 2024 WL 4333365, at *5 (D. Colo. Sept. 27, 2024) (finding no reversible error where the ALJ's "analysis at step two allow[ed] the court to follow his reasoning and to understand the basis for his conclusion that Plaintiff's mental health impairments did not justify a lower RFC"); *B.D. v. Commissioner*, No. 24-cv-00795-MDB, 2025 WL 854342, at *5 (D. Colo. Mar. 19, 2025) ("While the RFC discussion could have been more explicit about the non-severe mental impairments, the ALJ's analysis at step two allows the

Court to follow her reasoning and to understand the basis for her conclusion that Plaintiff's mental health impairments did not justify a lower RFC.").

It is not this Court's role to reweigh the evidence before the ALJ, and the substantial evidence standard does not permit reversal simply because the Court would reach a different conclusion. *Smith*, 821 F.3d at 1266; *Deherrera*, 848 F. App'x at 810. The Court respectfully concludes that the ALJ applied the correct legal standards and her decision is supported by substantial evidence. The Court finds no reversible error here. As a result, the Commissioner's decision is respectfully **AFFIRMED**.

**CONCLUSION**

For the reasons stated herein, the Commissioner's decision is respectfully **AFFIRMED**.

DATED: March 30, 2026                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge